I'm Rosemary Sherman representing Craig Alexie. I'd like to reserve two minutes of my time for rebuttal. There are three issues which I'd like to review this morning. The first is Mr. Alexie's past relevant work. The second is the improper rejection of the treating physician's disability opinion. And the third is the ALJ's failure to develop the record by failing to call a medical expert, failing to obtain Veterans Administration records, and failing to obtain the prior Social Security file. With respect to the past relevant work issue, I think the briefs are fairly straightforward. The ALJ found that the plaintiff was not disabled because he was capable of working as a telemarketer. The record is really clear. Mr. Alexie never worked as a telemarketer. Can you please tell me what difference in the skills, abilities, or functions is there between being a Christian phone evangelist or counselor or whatever he was and being a telemarketer? Sure. A telemarketer is basically someone who's selling goods or services. Whereas Mr. Alexie functioned as a Christian crisis counselor or as a prison ministry counselor. He wasn't selling anything. He wasn't attempting to collect. He was selling spirituality. But he wasn't getting money in exchange. But I mean, how is his function different, what he does physically? How is it a different – what are the – why would the physical problem interfere with one and not with the other? Physically, I would say, Your Honor, that the functions are the same. And we don't really know what he did as a Christian counselor. I mean, I read the testimony and it doesn't say much. I worked for Pat Robertson and I answered the – you know, I did this Christian counseling for Pat Robertson. Do we know whether it included any solicitation of funds? I know, Your Honor. I don't think it's in the record. The answer is no, we didn't solicit funds. Okay. Okay. Another issue that arises with respect to past relevant work issues all the time in Social Security cases is the ALJ's failure to follow the ruling 8262. And that ruling states that an ALJ must conduct a function-by-function analysis of all the physical and mental requirements for a job and then compare it with the claimant's ability to perform those requirements. This Court stated in Civil A that if an ALJ doesn't follow the functional analysis requirements, reversible error has occurred. And again, in this case, it's typical of what we see frequently in Social Security matters. The judge did not do a functional analysis of the telemarketer job, at least with respect to the mental functional requirements. The second issue is – Sure. There's – well, two things, Your Honor, if I could back up. His physical impairments would prevent him from working 8 hours a day, 5 days a week on a sustained basis, so – according to the treating physician's opinion. So therefore, I think Mr. Alexie's precluded from physically performing the job of either a telemarketer or a Christian crisis counselor. In addition, there is also evidence from Dr. Whitehill, an examining physician, that mentally Mr. Alexie would not be able to perform that job. Dr. Schneider was another doctor who also said he doesn't have the empathy to be a counselor. He has too much anger. He has a personality disorder. And he's not at all suited for that position. I would assume that if those doctors were addressing a telemarketer position versus a counselor position, those doctors would also say he's not suitable for a telemarketer position. Meaning you have to be empathetic with somebody you're counseling, but that empathy is similarly required for somebody you're trying to get money out of? I'm not sure why he's – if he's unsuitable for one, he's unsuitable for the other. This is a psychological characteristic rather than whether he can sit and do the – answer the phone or make the phone call. Correct. Yeah, okay. The second answer has to do with the ALJ's improper rejection of Dr. Bittner's disability opinion. Dr. Bittner stated in 1997 – please refer to my notes of January 27th in Dr. Bell's reports – Dr. Bittner's January 27th notes referenced migraines, left-sided numbness, neck arthritis and pain, degenerative disc disease of the spine, sleep apnea, a migraine equivalent, which he describes as spasm that causes weakness. Dr. Bittner also filled out a questionnaire in which he referenced several limitations, including a need to elevate legs, frequent rest breaks, need to lie down, absences over 24 days a year. Vocational experts stated that a person with those limitations was not employable. Therefore, contrary to the ALJ's assertion, the record does in fact support Dr. Bittner's disability opinion. Well, as I read Dr. Bittner's disability opinion, it's very short and basically relies upon Dr. Bell. I'm writing regarding – in regards to Craig Alexey, the patient continues to have migraine problems. Please refer to my note of copy, which I will send you. Also a letter from Dr. Bell, copy enclosed, continues to have pain problems. Therefore, I'm supporting in his attempts to attain disability payments. That's far short of saying I regard him as disabled, particularly when I read Dr. Bell's letter, at the end of which Dr. Bell says, assuming he has osteoarthritis, assuming he has the problems of which he is complaining, I think he needs to be involved with light-duty type activity and I recommend that he do that. I mean, that doesn't strike me as the treating physician telling us that we have somebody who's disabled. Well, my reading of that, Your Honor, is the treating physician is saying, look at what Dr. Bell has diagnosed. And Dr. Bell is a one-time examiner who's a – not a neurosurgeon, but a neurologist. And Dr. Bell is seeing him over the course of 30, 45 minutes and diagnosing him simply based on a neurological standpoint. Dr. Bittner, on the other hand, has seen this individual over a five-year period. He's heard Mr. Alexey complain of all sorts of things. Since 1992, it started with a numbness on his – I think it was his left side after the stroke, albeit it was a slight stroke. My reading of the record is that Dr. Bittner's looking at the totality of the evidence, not simply the back issue, which is what Dr. Bell seemed to focus on. The third issue in this matter is whether or not the ALJ failed to develop the record. This Court stated in Lester v. Chatter that an ALJ is required to consider the combined effects of mental and physical impairments. And based on that consideration, the ALJ is required to consider whether the combined effects satisfy a listing section or medically equivalent to a listing section, to use the proper terminology. In this case, the ALJ did not call a medical expert, even though the Social Security Rulings 96-6P specifically states that a doctor's opinion is required on the issue of medical equivalence. In a case such as this, where there are serious mental and physical impairments, the ALJ should have called a medical expert to address the equivalency argument. I've also argued that the ALJ erred by failing to order the Veterans Administration reports. Mr. Alexie is 70 percent disabled under the Veterans Administration Disability Program. And this Court recently stated in McCarty v. Massaneri that VA findings are entitled to great weight. Pursuant to the ALJ's duty to fully and fairly develop the record, it's our position that he should have ordered the VA records. Lastly, the brief alleges error because the ALJ did not include some of the basic records from the first Social Security application. There is reference in the records by the ALJ that Mr. Alexie was previously found disabled. It's not clear from the record that he was found disabled by the Social Security Administration between 1992 and 1995. I'm not sure if it's appropriate for me to bring that up here since it's not in the record. But it is important because that means that the issue in this case is whether or not Mr. Alexie was disabled from 1995 forward. He alleged disability since 1992. However, he was already determined to be disabled for a three-year period. So the issue is, was he disabled from 1995 forward? There is a HALAC section which says that if an ALJ is going to refer to a prior Social Security application, that the ALJ should not pick and choose and only look at parts of the record or only submit parts of the record. He should submit the entire record. And our position is that the ALJ erred by failing to put the entire prior Social Security case into this file. Thank you. Thank you, Judge. Your Honors, for the record, David Burdett on behalf of the Commissioner. To begin with the HALACs, the Commissioner cannot be bound to HALACs. HALACs is an internal memorandum  of notice and comment rulemaking. And Moore v. Apple says that that doesn't create anything that claimants can rely on in a court of law. With regard to the alleged need to call a medical expert, that only applies when the record is not fully developed, when the medical evidence is not fully developed. We have five doctors on the record here. We have Dr. Little, Dr. Whitehill, Dr. McLaren, Dr. Bittner, and Dr. Bell. So I don't think that at this point there was a need for a further medical expert to be called. And with regard to what the doctor said... Well, before you get that, we're talking about getting records. I realize that your brief is written on both sides before McCordy. But it does say that you must call a medical expert and must consider the VA findings and give great weight to them. And there is a VA finding here of disability, according to the testimony. According to the testimony, there's a VA finding, Your Honor. Now, two things about that. One is that I would set up a line of distinction between McCordy in this case, where in McCordy the VA findings were, I believe, in the transcript. And there was no question but that the plaintiff had come up and said, here, look at my VA records, and this is something that you need to look at. And in this case, that was not done. I think that the ALJ... That issue, just to clarify. Yes. Was that issue raised before the ALJ? That is, was there a request before the ALJ to have the VA records in evidence? I believe what happened, Your Honor, in this case was that there was testimony to the effect that, yeah, the VA found me disabled, too. And there was also testimony that at one time he was on a state welfare program. But at any rate, with regard to the VA, there was testimony... I'm sorry, I didn't hear you. The testimony was also on a something program, but I didn't hear what you said. Oh, there was also testimony, Your Honor, that he was on a state welfare program in 1995 and 1996, until that was shut off. But with regard to the VA records, it was raised at the hearing, I'm on VA disability. But the records were not... The VA records were not put into the administrative record here. And... Yes, Your Honor. And I don't think that the ALJ necessarily has an affirmative duty to go out and inquire about VA records that were not raised and brought into the record by the plaintiff who has every opportunity to develop it. Well, if nobody disputes the fact that he's got a VA finding of disability, why would he care about bringing in the records? Well, he might care because he might not want everybody to know that he's only a partially disabled person. I mean, the VA disability is very different from the Social Security disability in that respect. You know, they have 10%, 20%, in increments of 10% disability. Social Security disability is kind of a zero-sum game. Either you're... Well, I'm not going to recite the boilerplate, but... The VA disability doesn't... Isn't a determination that a person can do no gainful work in the national economy, correct? That's right, Your Honor. The VA makes their rulings based on different criteria. And they can have partial disability. Well, it's very similar, and you have to give it great weight because of the similar factors. And even though it doesn't make the finding, which it will suggest, sensible, we say you must give it great weight, and you must consider it. Now, what you're saying is, well, the person just tells you there's a finding, and you just say, well, okay, that's nice, and if nothing else happens, you can just disregard what he said, because, aha, he didn't bring in the records. Well, I think it's on him to... He has the burden of proof, and I think it's on him to... Assuming that we have a case like this one, where there are multiple doctors' opinions, that, you know, every opportunity has been taken to give the plaintiff an opportunity to prove his case that he is disabled. I don't think that there's then a duty, even post-McCarty, to go out and inquire about whether he... what the extent of his VA finding is, what the extent of his state disability finding is, a la Wilson v. Heckler. Well, but here, there is... We have a general principle that there's a duty on the ALJ to develop the evidence fully. There is, then, you say, one issue where it's not fully developed, and that's that he's got a VA finding, but the record doesn't tell us fully about that. That's part of his medical records. Why isn't that subject... Why do you say the burden's on him, rather than saying that the rule that we have, that the ALJ has a duty to develop the evidence fully? Well, the burden is on him, Your Honor. I mean, the burden is on the plaintiff, Your Honor. Definitely, the ALJ has a duty to fully and fairly develop the record, but I guess it comes down to what your definition of a fully and fairly developed record is. Without question... Well, if you're going to say that the record isn't fully developed because all you have is a statement about a finding and we don't have the records, isn't that saying it's not fully developed? Well, I say that it's adequately developed for us to make a Social Security determination. If it's adequately developed, then all we need is a testimony that there's a VA finding of disability. Our case says you must consider that and give it great weight. He didn't mention it. That's it, right? Well, Your Honor, if that point of view is to carry the day, then we have to remand this case. Well, I don't think you want to assume that point of view would carry the day. That's Judge Reinhardt's view, perhaps. Well, I was asking you a question. It's not even a question. It was a question. He's asking you a question. I mean, I understand McCarty, is that the name of it? McCarty is the case, Your Honor. Does that case just mean that if there's a determination that's in the record from the VA that whatever they've said would get great weight? That is the position. Okay, that's fine if that's what it means. But, I mean, for all we know, the VA records would show affirmatively that the claimant could do some kind of work. You might say he's partially disabled, but he could do work. We don't know what those records show. I guess the question is, whose burden is it to go get those records and submit them? And I will argue that the burden is on the plaintiff. But they just said it was fully and fairly developed without those records. Well, I think it is. Okay. Then we don't need them. We don't need them to deny or we don't need them to agree. We don't even have to consider the VA's firm. I've got a different question, but it goes obviously to the same point. And that is, is McCarty a new rule? There may be variations among us as to whether we think it's a new rule or not. But as I read McCarty, that changes things for me. It seems to me it changes the landscape as to what you have to do for a VA finding a disability. At the time that this hearing took place and the time he brought in whatever he had, McCarty was not on the books. Is that enough reason to send it back for reconsideration in light of McCarty, in light of what is now the ruling principle but maybe was not at that time? Well, Your Honor, I don't think that it needs to be sent back. But I do think that McCarty is a new rule. And certainly if it is sent back, then the McCarty principle applies to whatever further proceedings are going to go on. But what I'm really after is he might not have known what was at stake in his not bringing them in, and the ALJ might not have known what was at stake in not saying, well, wait a minute, I really want to see those because they're quite relevant. That's to say neither the ALJ nor the plaintiff here might have known quite what was at stake. Well, I think that's a fair characterization, Your Honor. I mean, McCarty only came out in the interval between the briefs being submitted here and   I that's a pretty good question as far as the presentation is concerned. Yeah, that's being here today. I think it is while you are on the plane flying out and we don't want to get disabled... I'm trying to stay on my feet. But at any rate, are there any further questions? You're doing very well. Thank you, Your Honor. I think that the other issue, the main other issue is the issue of whether the pastoral work can be translated from the 700 club counselor to the telemarketer. And on that, I would simply say that I think that, as was indicated earlier by the panel, no impairment that is going to prevent a person from being a telemarketer is going to prevent them from being on the phone as a 700 club Christian counselor and vice versa. Well, I don't know about telemarketers. I mean, the doctor's report does suggest he wouldn't be a very good counselor. He doesn't have the emotional stability even to take care of himself, let alone counsel others. But maybe that's good enough to work for Pat Robertson. I don't know. I don't know. But I. Is that the same? Can you really be a telemarketer? Maybe that's an advantage when you're a telemarketer, if you're emotionally being angry and pushy. Yeah, sure. I like to take advantage of people. It sounds like a job qualification to me. It could be, Your Honor. I think that with that, I'm beginning to run over my time and I'll just be seated. Thank you. Thank you. Just briefly, Your Honors. Counsel noted that a medical expert is not required when the record is fully developed. We would strongly disagree with that and refer the court to Social Security Ruling 96-6P, which specifically states that a medical expert is required on the issue of medical equivalency. With respect to the McCarty issue, McCarty basically followed numerous other jurisdictions that held that the Veterans Administration records were relevant in a Social Security case. So I don't see it as any great new rule. From my perspective, you hope it's a new rule. Does McCarty say anything about like whether the ALJ has to go get those records if they're not tendered by the claimant? Does the record say anything to that effect, Your Honor? Yes. I mean, does McCarty say anything? Does McCarty put a burden on the administrative law judge to go retrieve VA records that have not been offered in evidence by the claimant? I don't recall anything in McCarty, Your Honor, that imposes that burden. Well, aside from McCarty, what is the general law about the obligation of the ALJ? Well, two things come to mind. First is the ALJ's duty to fully and fairly develop the record which was reviewed in Smolin, even if the claimant has an attorney. The second is, and I think it's quoted in our briefs, is the Social Security Act itself states that the commissioner shall obtain all medical records for each claimant. There are additional references in our brief in the regulations which also, I believe, require the commissioner to obtain records. And so it's based on all of those authorities that we would argue require the ALJ to go get the Veterans Administration records. If nothing more, the ALJ could have inquired and stated, provide us a summary of why you found him disabled and what was the basis of the disability ruling. I think that would have been sufficient under McCarty. Thank you, counsel. Thank you. Case 230 will be submitted. Next case on the calendar is Young v. Cross. I think it may be two consolidated cases. Yeah. Yeah, we're hearing them together for argument. That's it.
judges: Reinhardt, W Fletcher, Gould